THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. MALACHY LIBBERS, Appellant.— Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered May 25, 1971, convicting him of robbery in the first degree (two counts), grand larceny in the third degree (two counts), burglary in the third degree, and assault in the second degree (two counts), upon a jury verdict, and imposing sentence. Judgment affirmed. On October 18, 1968, at about 2:30 P.M., Mr. and Mrs. Gutterson were the victims of a robbery in their apartment in Brooklyn, in the course of which Mrs. Gutterson was seized by the throat, handcuffed and robbed of her jewelry, Mr. Gutterson was bludgeoned and left lying on the kitchen floor and Mrs. Gutterson's aged father was blackjacked. Appellant (Libbers) and a codefendant (Tillman) were convicted of the crimes, following a joint trial in which Mrs. Gutterson identified Libbers as one of the perpetrators. The reliability of the in-court identification was supported by proof that Mrs. Gutterson had ample opportunity to observe Libbers prior to the commission of the crimes when he and his partner, posing as telephone repairmen, spent 15 to 20 minutes in the Gutterson apartment, and shortly thereafter when they returned to the apartment, this time on the pretext by Libbers that they had forgotten something, at which time the robbery was committed. During the robbery (which consumed about 15 minutes) Mrs. Gutterson saw Libbers when he took her jewelry and when he blackjacked her father. Following the robbery she gave the police a description of Libbers, as a result of which he was apprehended in Florida 11 days later and was found to have in his possession a wallet and several credit cards which had been taken from Gutterson by Tillman during the robbery and which, Libbers testified, he had purchased from someone known as " Chico " at a bar. At the trial Libbers offered into evidence a motel registration card to substantiate his alibi defense and his testimony that on October 18, 1968 at 1:00 P.M. (one and a half hours before the alleged time of the robbery) he was at the Cloverleaf Motel in Saugerties, New York, having registered there the night before and having requested the motel clerk to call him at 12:00 noon the following day. Prior to the trial, the District Attorney had been served with notice and particulars with respect to Libbers' alibi defense and he was advised that Charles Grasso, the motel owner, was an alibi witness. Upon the People's objection, the trial court refused to receive the card into evidence. On this appeal Libbers claims that the exclusion of the registration card constituted reversible error. This error, he contends, was compounded when the District Attorney in his summation questioned the very existence of the motel. The District Attorney's comments in this respect were also claimed to constitute grounds for reversal. In our opinion the court's ruling was correct. Absent authentication of the card and the notations thereon as entries in the regular course of business by someone connected with the motel, the exhibit constituted hearsay evidence and a self-serving declaration to the extent that it was being offered to substantiate Libbers' testimony that he registered at the motel and that the clerk made the notations alluded to. While it might have been relevant and admissible on the issue whether there was a Cloverleaf Motel in existence, the exhibit was not offered for that purpose; nor was the existence of the motel an issue in the case at the time the exhibit was offered by Libbers and excluded by the court. We agree that the subsequent comments by the prosecutor in his summation, in which he questioned the existence of the motel, were improper. However, in our opinion, these subsequent comments may not be deemed to retrospectively affect the propriety of the court's ruling. Moreover, in view

of the cogent case presented by the People, the impropriety of the prosecutor's comments is not in our opinion persuasive of reversal. Also of significance is the fact that Libbers had the opportunity to and did testify to all the facts pertaining to the motel registration; and these facts, even if true, would not have established that he could not have participated in the robbery at the place and time that it actually occurred. This is even further borne out by the jury's rejection of the testimony of the very individual with whom Libbers allegedly kept his appointment in Woodstock, New York, at the time the robbery was committed, which appointment allegedly precipitated Libbers' Cloverleaf Motel registration. Accordingly, for the foregoing reasons, we conclude that the prosecutor's comments and the defendant's inability, because of the court's ruling, to utilize the motel registration card to meet the issue of the existence of the motel raised by the prosecutor in his summation, may be disregarded as harmless errors, even if they be deemed errors (CPL 470.05, subd. 1). We also do not agree that reversible error was committed (as noted in the dissent) because (a) the trial court refused to instruct the jury that the People may not vouch for the credibility of their witnesses, (b) the court failed to adequately counteract some other improper comments made by the prosecutor in his summation and (c) it was improperly elicited from the police detective witness that he was assigned to the Homicide Squad. We construe the prosecutor's remarks alluded to as in the main not vouching for the witnesses' credibility; and, to the extent that the prosecutor may have overreached in his zealousness, and to the extent that the court may not have thoroughly destroyed the prejudicial effects, if any, of the prosecutor's remarks, we are of the opinion that, in view of the strong proof of guilt, such overreaching and lack of thoroughness may also be disregarded as harmless error. This conclusion and the rationale therefor also applies to the reference to the police detective's assignment to the Homicide Squad. While it may have been unnecessary, it was elicited in the course of a witness' normal preliminary self-identification and we do not attach to it such prejudicial significance as would warrant reversal. Rabin, P. J., Martuscello and Latham, JJ., concur; Hopkins, J., dissents and votes to reverse and to order a new trial, with the following memorandum, in which Munder, J., concurs: On October 18, 1968, at about 2:30 P.M., Mr. and Mrs. Ben Gutterson were robbed — and other crimes were committed — by two men who had gained entry to the Gutterson's Kings County home. Following the joint indictment of appellant Libbers and one Gerard Tillman for those crimes, Libbers, in May, 1970, served a bill of particulars stating that, on October 18, 1968, at about 1:00 P.M., he was at the Cloverleaf Motel in Saugerties, New York, and that Charles Grasso, the motel owner, was an alibi witness. At the trial held in 1971, Mr. and Mrs. Gutterson identified Libbers and Tillman as the robbers. Among other evidence, it was proved that, about a week following the robberies, Libbers was arrested in Florida, where he was found in possession of Mr. Gutterson's credit cards, which had been taken from Mr. Gutterson at the time of the robbery. Over defendants' objections that a People's prospective police witness should not be allowed to testify concerning his assignment, the People, for the purpose of proving that Libbers and Tillman knew one another at the time of the robbery, elicited testimony in their case in chief from a detective that he was assigned to "Manhattan South Homicide" and that, in his "official capacity as a homicide detective", he had spoken to Tillman "concerning his whereabouts on a certain time in 1968" and that Libbers' name was mentioned. In defense, Libbers testified that he had purchased Mr. Gutterson's credit cards from a man in a bar. Libbers testified that, at about 11:00 P.M. on October 17, 1968,

he registered at the Cloverleaf Motel in preparation for a business appointment the next day in Woodstock, New York. However, notwithstanding that Libbers at the trial had identified a printed motel registration card, bearing the name "Cloverleaf Motel", the motel's address and telephone number, and other printed matter relevant to the conduct of a motel, as the card on which he had made entries at the time of his registration at the motel on October 17, and notwithstanding that he had testified that a notation on the card had been made in his presence by a motel clerk in answer to Libbers' request to be called at a certain hour on October 18, and that in November, 1968, he had obtained the card from Grasso, the motel owner, and then had given the card to his trial attorney, the trial court refused to receive the card in evidence, upon the People's objection that Libbers had not proved that the card was a business record of the motel. On cross-examination, the People showed that Libbers neither recalled the number of the motel room he allegedly had occupied nor whether there was a swimming pool at the motel. In summation, the People stated, "Now, I swear to you at this moment from what we have seen in this trial, I sincerely doubt, because I have no other reason but to doubt that the ·Cloverleaf Motel exists." Upon Libbers' objection, the court stated, "Yes, we will use some other words," whereupon the People stated, "I sincerely doubt if the Cloverleaf Motel exists. Where is the evidence that he spent the night in the Cloverleaf Motel? Is the owner, Mr. Grasso here to tell us? Mr. Santangelo [Libbers' attorney] told me maybe that Mr. Grasso was going to be here and tell us that Libbers spent the night there." After further objection by Libbers, the People dwelt upon Libbers' failure to prove that he was at the motel, to recall his motel room number and whether the motel had a swimming pool. The People stated, "Cloverleaf Motel? I don't know if it exists. I don't know if it stands. We don't even have a telephone directory to show that it's in existence." With respect to the credibility of Mr. Gutterson, who had admitted a 1965 conviction for criminally receiving stolen securities, the People argued, "This isn't a case of Ben Gutterson versus these two men. It's the People versus these two men. He is my witness." When Tillman's attorney objected that the People were "now vouching for the credibility" of Gutterson and requested an instruction to the jury that the People could not vouch for his credibility, the court stated, "I refuse to so charge." In my opinion, it was error to refuse to admit the Cloverleaf Motel registration card into evidence. The business entry rule does not apply to direct evidence by a witness concerning his execution of a writing proffered by a business to him; nor does that rule bar the reception into evidence of the writing so identified by the witness. Further, the motel registration card is not a self-serving declaration by Libbers. The card was offered in proof of his alibi and such proof, in itself, is not proof of an assertive nonverbal act (2 Wigmore, Evidence [3d ed.], § 418; *State* v. *Krout,* 183 N. C. 804). On Libbers' direct examination, he sought to prove by the registration card his presence at certain times at a place distant from the crime; and, on his redirect examination, when the card was again denied admission into evidence, the card was admissible to prove, in conjunction with his testimony, that at a certain time and place he received the card, evidence tending to prove the motel's existence, which existence had been implicitly questioned in cross-examination of Libbers and was later repudiated by the People in summation. It was error for the trial court, at a critical point in the People's summation, to refuse to instruct the jury that the People may not vouch for the credibility of their witnesses and it was error for the People to swear that they doubted that the Cloverleaf Motel existed and to say to the jury that Libbers' attorney had told them

that the motel owner, who had not testified, was going to testify that Libbers had spent the night of October 17 at the motel. When Libbers protested that the People were swearing evidence to the jury, the court merely said, "We will use some other words"; when the People persisted and said they doubted that the motel existed, the court said nothing; when the People said that Libbers' attorney had told them that the motel owner would testify in Libbers' behalf, the court only stated that the People should confine themselves to fair comment on the evidence (see *People* v. *Lovello*, 1 N Y 2d 436; *People* v. *Figueroa*, 38 A D 2d 595). Last, it was error to elicit from the police detective that he was assigned to Manhattan South Homicide and that, during the course of his duties, he had had a conversation with Tillman in which Tillman mentioned Libbers' name. Testimony by the detective concerning his assignment served no evidentiary purpose relevant to the crimes charged and could not but have signalled to the jury that Libbers and Tillman had been homicide suspects in 1968.